█ In the Matter of MARVIN A. NEWMAN, Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Respondent was admitted to the Bar in March, 1959 by the Appellate Division, Second Judicial Department. By decision dated February 9, 1976, he was censured by this court (Matter of Newman, 51 AD2d 821). In the present disciplinary proceeding, petitioner moves to confirm the report of the hearing Judge which sustained four charges of misconduct against respondent consisting of temporary conversion of escrow moneys and failure, for a period of approximately five months, to account for a sum of money held in escrow and to remit any balance to his client. Petitioner's proof with respect to the conversion charges consists of respondent's testimony at a preliminary hearing held in petitioner's office and respondent's bank statements which show that, on occasion during the period from June 16, 1975 to November 14, 1975, respondent's trust account was overdrawn and the balance in the account was less than the amounts due his clients. Respondent concedes that his trust account was overdrawn on occasion but contends that no one suffered any financial loss since the bank had agreed to cover any overdrafts that might occur because it had previously made an unauthorized charge to the account in the amount of $1,405.72. It appears from the record that respondent had several accounts in the same bank, including an attorney account and a trust (escrow) account. On March 10, 1975, two checks totaling $1,405.72, which had been deposited in respondent's attorney account, were returned for insufficient funds. Instead of charging the returned items against the attorney account which would have created an overdraft since the account had a balance of only $619 at the time, the bank, without respondent's knowledge or consent, charged the items against the trust account which then had a balance of $29,261.26. Respondent called the bank's attention to the wrongful charge a few days later. However, he did not insist that the bank rectify its error by charging the items to his attorney account since he did not have sufficient funds at that time to make the account whole. Instead it was agreed that the bank

would cover any overdraft which thereafter occurred in the trust account because of the unauthorized charge, with respondent to gradually make up the amount of the charge by leaving fees and expenses earned in the trust account. Thereafter, as previously noted, on occasion between June 16 and November 14, 1975, the trust account was overdrawn and the balance in the account fell below the amounts then due his clients. However, the officer of the bank called by respondent testified that all overdrafts which he had permitted on the trust account as a result of the unauthorized charge were made good by the bank, so that, to his knowledge, no person to whom respondent issued a check was ever harmed. While even temporary use of escrow funds is improper (*Matter of Marks*, 44 AD2d 290), here, given the fact that the shortage in the trust account in the first instance was caused by the unauthorized act of the bank and the fact that all overdrafts permitted thereafter by the bank were made good by it, as well as the fact that there is no evidence that any person suffered any financial loss as the result of respondent's handling of the account, we are of the opinion that respondent's conduct does not warrant the imposition of any punishment and, therefore, we dismiss the conversion charges. Turning to the remaining charge, respondent was retained by Lydia Freytag to represent her in connection with the sale of a piece of real property. The closing took place on August 6, 1975, at which time respondent retained $250 in escrow to cover the cost of certain repairs to be made to the property by August 31, 1975. The escrow agreement authorized respondent to remit any balance in the escrow account to his client upon completion of the repairs. On January 18, 1976 Mrs. Freytag complained to the State Attorney-General that respondent failed to reply to three letters which she had sent him concerning the escrow account and the balance due her. Her complaint was forwarded to petitioner, who sent a copy of it to respondent on February 3, 1976 and requested a response within two weeks. By letter dated February 12, 1976, respondent advised that on January 21, 1976, he had remitted $122.89, representing the balance of the escrow fund, to his client and that, on February 5, 1976, he had thereafter forwarded to her, in response to her request of January 29, 1976, copies of the invoices for repairs to the property. While respondent's delay in responding to his client's demands cannot be condoned, the fact remains that he did remit the balance due three days after she mailed her complaint to the Attorney-General and 16 days before petitioner forwarded a copy of the complaint to him. Under these circumstances, and in view of the fact that there is no evidence that any other client suffered, or complained of, any loss or prejudice, we determine that, by reason of the lengthy investigation and prosecution of these charges, covering a period of some four years, respondent has been sufficiently punished for his delinquent conduct. In reaching this result, however, we caution respondent that his carelessness cannot be disregarded and that, in the event any future charges of professional misconduct are sustained against him, the court's responsibility to safeguard the public from the mischief produced by lax attorneys will evoke a penalty more severe than a censure. Petition dismissed. Sweeney, J. P., Kane, Staley, Jr., Main and Mikoll, JJ., concur.

FOURTH DEPARTMENT, JANUARY, 1980

(January 11, 1980)

ROBERT ANDERSON, Individually and as Administrator of the Estates